John HEALY, Gretchen H. Healy, husband and wife; Donald Ferber, Margaret Ferber, husband and wife; Tomas Sylva, Marie Sylva, husband and wife;

Sylvester McCray, Lois McCray, husband and wife; Sandra Prentice; John L. Rooney, Marlys Rooney, husband and wife, Appellants,

v.

INDEPENDENT SCHOOL DISTRICT NO. 625, Appellee.

No. 91–2200.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1991.

Decided April 28, 1992.

Christopher J. Dietzen, Bloomington, Minn., argued and on brief (Daniel W. Voss, on the brief), for appellants.

John M. Baker, Minneapolis, Minn., argued and on brief (Thomas M. Sipkins, on the brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and MAGILL, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The issue before us is the propriety of a ruling by the school board of Independent School District No. 625 terminating school transportation benefits under the Minnesota Equal Transportation Act, Minn.Stat. Ann. § 123.76–80 (West Cum.Supp.1992). The appellants live in District No. 625 and their children attend a Lutheran school located outside the District. After the District concluded that the parents were no longer entitled to benefits under the Act, the parents brought this 42 U.S.C. § 1983 (1988) action claiming that the District violated their rights to substantive due process, equal protection, and the free exercise of religion. The district court[1] rejected their claims, and we affirm.

Appellants' children[2] live in District No. 625 and attend Gethsemane Lutheran School, located in Maplewood, Minnesota. Until 1988, the District subsidized transportation costs for these children under the Minnesota Equal Transportation Act.[3] Under the Act, the District provided the children transportation to the District boundary or reimbursed their parents for the cost of such transportation if there were no schools in the district maintaining "appropriate grades or departments."[4]

Until 1988, the District paid transportation costs for the appellants' children because it thought that Gethsemane was one campus of a larger Lutheran school which had its main campus within the district. The District regarded Gethsemane as part of an in-district school, and paid transportation costs on that basis. In 1988, the District learned that Gethsemane was a completely distinct, separate school. The District concluded that it was inappropriate to provide transportation benefits under the Act because Gethsemane was located outside the district and there were five Lutheran schools within the district. The parents alleged that they were entitled to benefits under the Act because there were no "appropriate grades or departments" maintained within the district. The parents ex-

---

* The HONORABLE DANIEL M. FRIEDMAN, Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

1. The Honorable Donald D. Alsop, Chief United States District Judge for the District of Minnesota.

2. The action in the district court also involved another group of children who attend Trinity School located in Minneapolis, Minnesota. This group did not appeal.

3. Minn.Stat.Ann. § 123.78 provides in part:

Subdivision 1. General Provisions. A district eligible to receive state aid for transportation under Chapter 124 shall provide equal transportation within the district for all school children to any school when transportation is deemed necessary by the school board because of distance or traffic condition in a like manner and form as provided in sections 123.39 and 124.223, when applicable.

Subd. 1a.(a) *The school board of any local district shall provide school bus transportation to the district boundary for school children residing in the district* at least the same dis-

tance from a nonpublic school actually attended in another district as public school pupils are transported in the transporting district, whether or not there is another nonpublic school within the transporting district, *if the transportation is to schools maintaining grades or departments not maintained in the district* or if the attendance of such children at school can more safely, economically, or conveniently be provided for by such means. (Emphasis added).

4. To effectuate the statute, the Minnesota State Board of Education promulgated certain rules. Rule 3520.1500 (1990) provides:

An eligible resident pupil shall receive free and equal transportation to the appropriate school district boundary if there is no nonpublic school within the district maintaining grades or departments that are maintained in another district, or if attendance can more safely, economically, or conveniently be provided by such means.

*A nonpublic school located within the resident district shall be deemed unavailable if it does not maintain the appropriate grades or departments. The term 'appropriate department' shall include a department of religion.* (Emphasis added).

plained that Gethsemane is affiliated with the Evangelical Lutheran Church of America (ELCA), while all of the Lutheran schools within the district were affiliated with either the Missouri Synod or Wisconsin Synod. The parents further explained the theological differences between the different synods, and argued that since there was not an ELCA synod school within the district, the district did not maintain an "appropriate department," and the parents were entitled to benefits under the Act. In determining whether the District offered an "appropriate department," the District attempted to avoid establishment clause issues. Relying on the First Circuit decision in *Jamestown School Committee v. Schmidt*, 699 F.2d 1 (1st Cir.1983), *cert. denied*, 464 U.S. 851, 104 S.Ct. 162, 78 L.Ed.2d 148 (1983), the District refused to compare the different orders or divisions within the various denominations and only considered the various "widely accepted denominations within each basic religion." Accordingly, the District refused to consider the parents' argument.

The parents brought this action, attacking the District's decision as a violation of their rights to due process, equal protection, and the free exercise of religion. They also claimed that the District conspired to deprive them of their constitutional rights. The district court rejected the parents' claims and entered summary judgment in favor of the District. *Healy v. Independent School Dist.*, No. 3–90 Civ. 46, slip op. at 13, 1991 WL 337534 (D.Minn. Mar. 5, 1991). The district court first concluded that the District's decision did not violate the free exercise clause. The court reasoned:

> This is not a case in which the state has prohibited or penalized conduct mandated by religious belief. Rather, this is a case in which the government has merely declined to subsidize activity mandated by religious belief. The Supreme Court has made clear that a law does not burden a constitutional right merely because it does not subsidize the exercise of that right.
>
> ... The District's refusal to fund part of the cost of transporting plaintiffs' children to their chosen schools does not

coerce plaintiffs to abandon their religious beliefs.

*Id.* at 8–9.

The district court also held that the District's decision to deny transportation benefits did not violate the parents' substantive due process rights as the District's decision could not be characterized as arbitrary or capricious. *Id.* at 12. The district court stated:

> The School District has grappled with an undeniably vague statute and has made a reasonable attempt to balance the governmental interest in avoiding excessive entanglement with religion and the public's interest in equal access to school transportation. Without question, the School District's concern over excessive entanglement of government with religion is legitimate. Indeed, even under the policy adopted by the School District in the case of Gethsemane, the Minnesota ETA may be vulnerable to an Establishment Clause attack. That question, however, is not before this court.

*Id.*

Finally, the district court rejected the parents' claims that the board decision constituted an equal protection violation and a conspiracy to deprive the parents of their constitutional rights. *Id.* at 10–13.

On appeal, the parents argue that the District's decision to deny them transportation benefits constituted a violation of their substantive due process rights. The parents argue that the District, the district court, and this court are obligated to favor an interpretation of the statute which renders it constitutional, and that the District has searched for reasons not to provide transportation benefits under the Act instead of searching for an interpretation of the Act that would allow it to provide benefits. They argue that the District decision was arbitrary and capricious and, therefore, violated their substantive due process rights.

As background for their arguments, the parents explain that until 1987 there were essentially five separate Lutheran churches within the United States, and that in 1987, the American Evangelical Lutheran

Church, The Lutheran Church of America, and the American Lutheran Church merged to organize the Evangelical Lutheran Church of America (ELCA), which left three Lutheran organizations in the United States. The parents explain that the Gethsemane school is a member of the ELCA, which is distinct from the other synods. The parents detail the differences between the ELCA and the other synods, and contend that because of these differences, there is no "appropriate department" maintained in the district.

The First Circuit considered a statute analogous to the one here in *Jamestown School Committee*, 699 F.2d at 1. In that case, the First Circuit invalidated part of a Rhode Island statute that provided a private school student busing to a school outside his region if the Commissioner of Education concluded that "there is no similar school within the region." *Id.* at 4. The court invalidated this portion of the statute, reasoning:

> If the Commissioner does his job, he will be required to examine the content and curricula of religious programs in order to determine whether they are similar. We are troubled by the possibility that the Commissioner would have to engage in educational and perhaps even theological hair-splitting to compare sectarian schools, especially where the schools may represent competing orders or approaches of a single faith. "This kind of state ... evaluation of the religious content of a religious organization is fraught with the sort of entanglement that the Constitution forbids." Moreover, even such seemingly secular items as library or drama program equality may pose religious issues, for one man's masterpiece may be another's heresy.

*Id.* at 13 (citations omitted).

The parents argue that *Jamestown School Committee* is distinguishable because the statute at issue in that case required the Commissioner of Education to make a finding as to whether there was a similar school located within the region. They contend that no such requirement is contained in the Minnesota statute, and that it would be a reasonable interpretation of the Minnesota statute to allow the schools themselves to determine whether the in-district schools maintain a department of religion which is different from their religious department.

We reject the parents' distinction. The essence of the parents' argument leaves little doubt that the result they seek would require the school board to compare religious programs. The board in this case, as the board in *Jamestown*, should not be required to engage in the theological hair-splitting of comparing sectarian schools. Accordingly, we cannot conclude that the district's decision was arbitrary or capricious, and no substantive due process violation occurred. As the district court pointed out, we need not consider any establishment clause issues raised by the Act because neither party has raised the issue.

The parents also claim that the District violated the equal protection clause because it recognizes the different Lutheran synods when making in-district transportation decisions. Some question remains whether the appellants adequately raised this issue before the district court. In any event, The Minnesota statute does not require the school district to determine whether students attending schools within the district offer a grade or department not maintained elsewhere. *See* Minn.Stat.Ann. § 123.76 and § 123.78, subd. 1. Further, although appellant argues the District's interpretation of the statute and rule results in unequal treatment, in light of the above discussion, we cannot conclude that its interpretation is irrational. For these reasons, we reject the appellants' equal protection argument.

The district court did not err in granting summary judgment. We affirm the judgment of the district court.